NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LEIGH C., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, L.C., *Appellees.*

No. 1 CA-JV 21-0187
FILED 10-19-2021

Appeal from the Superior Court in Maricopa County
No. JD532533
The Honorable Cassie Bray Woo, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Lauren J. Lowe
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Jennifer M. Perkins joined.

---

**C R U Z**, Judge:

¶1        Leigh C. ("Mother") appeals the superior court's order terminating her parental relationship to her child, L.C.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Mother and Michael C. ("Father")[1] are the biological parents of L.C., born October 2017.  In April 2019, the Department of Child Safety ("DCS") received a report that Father was threatening someone with a gun outside Mother's home while L.C. was present.  Police responded and located drug paraphernalia inside the home within the reach of L.C.  It was also reported that Father was selling methamphetamine and heroin from the home and Mother was possibly under the influence of a substance in the presence of L.C.  Mother admitted that Father used methamphetamine.  Mother denied using methamphetamine herself but admitted to smoking marijuana.  On three occasions in May 2019, DCS requested Mother submit drug tests to rule out a potential substance abuse problem, but she failed to do so.

¶3        DCS took custody of L.C. and filed a dependency petition, alleging L.C. was dependent as to Mother due to neglect and substance abuse.  DCS offered Mother drug testing, substance abuse treatment, supervised visitation, transportation, and a parent aide.  Mother initially failed to participate in any services except for supervised visitation.  DCS submitted four Terros referrals on Mother's behalf between May 2019 and January 2020, but each time she failed to complete the scheduled intake and was closed out of the service due to lack of contact.

¶4        Mother finally submitted four drug tests within a two-week time period in February and March 2020, which were all negative.  Mother also completed an intake through Terros in March 2020, and was

---

[1]        Father is not a party to this appeal.

recommended for intensive outpatient services, parenting classes, domestic violence classes, and a psychological evaluation. However, Mother refused to participate in any services through Terros, arguing she did not need them. Mother also stopped submitting drug tests and failed to participate in a scheduled intake after receiving a fifth Terros referral in June 2020. Mother closed out of parent-aide services unsuccessfully and failed to attend a scheduled psychological evaluation.

¶5        Following a court order to participate in services, Mother completed a psychological evaluation in July 2020. The evaluator recommended Mother comply with drug testing and complete individual counseling. Mother requested a referral from DCS for a specific counselor who was not covered by Mother's insurance. DCS declined, instead provided Mother with a list of potential counselors that were covered by her insurance plan, and directed her to self-refer for individual counseling. Mother did not self-refer for any counseling.

¶6        Mother became pregnant[2] during the dependency proceedings and, during an August 2020 prenatal doctor visit, tested positive for methamphetamine. Shortly after, Mother gave birth and tested negative for illicit substances three times while in the hospital. Mother provided DCS a hair follicle in early September 2020 which tested positive for methamphetamine. Mother denied using illicit substances and claimed the positive drug tests were either from a nasal spray or because she had been in the same room as a friend who was smoking methamphetamine. DCS referred Mother to Terros for a sixth time, and Mother completed her second intake, which resulted in a recommendation to participate in standard outpatient services. Mother refused to do so.

¶7        In September 2020, visits were suspended due to DCS' concerns regarding several people observed in Mother's home during routine visits and Mother's refusal to provide information on who was living in the home. Visits were later resumed and DCS submitted a second parent-aide referral, though Mother was inconsistent in her participation in the skills sessions and Mother failed to enhance her nine diminished capacities.

¶8        In November 2020, DCS moved to terminate Mother's parental rights, but Mother's participation in services did not improve. Mother did not participate in regular drug testing or counseling services as

---

[2]        This child was removed from Mother's care but is not a part of this appeal.

recommended by the psychological evaluator. DCS provided two more referrals to Terros, but Mother failed to engage in treatment. Mother closed out of parent-aide services unsuccessfully once again.

**¶9**     During a visit in February 2021 that took place at a DCS office, Mother refused to comply with the rules. The visit ended early, and the case aide, multiple supervisors, and security were needed to physically remove the children from Mother. After this visit, Mother missed five consecutive visits and her referral was closed out. Visits resumed shortly before the termination hearing.

**¶10**     In April 2021, a two-day termination adjudication hearing was held, and the superior court terminated Mother's parental rights to L.C. on the grounds of out-of-home placement. *See* Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(a), (c). The superior court further found that termination was in L.C.'s best interests, and DCS provided appropriate reunifications services to Mother, but she "refused to participate in services and demonstrate the necessary skills to safely parent [L.C.]."

**¶11**     Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

**¶12**     The superior court may terminate a parent-child relationship if it finds at least one statutory ground for termination under A.R.S. § 8-533(B), and that termination is in the child's best interests. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶¶ 11-12 (2000). DCS must prove by clear and convincing evidence that it made a reasonable effort to preserve the family and provide reunification services. A.R.S. § 8-533; *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192-93, ¶¶ 33, 42 (App. 1999). We accept the superior court's factual findings if reasonable evidence supports them and will affirm its termination ruling unless it is clearly erroneous. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016).

**¶13**     Mother argues DCS failed to provide appropriate reunification services because it did not refer her to an individual counselor as recommended by her psychological evaluator. It is DCS' policy that parents with their own insurance are required to engage in counseling services through their private insurance. Here, Mother had her own insurance, and DCS informed her that she needed to self-refer for counseling.

¶14        Mother claims her insurance would not cover individual counseling, and DCS refused to put in a request for her. However, DCS testified that Mother's insurance did not cover a specific provider from who Mother sought counseling services. A DCS caseworker researched Mother's insurance plan, provided Mother with a list of providers who were covered, and had multiple conversations with Mother about obtaining counseling. Mother does not argue that she was refused assistance in the self-referral process or that she was otherwise incapable of self-referring. On the contrary, Mother's psychological evaluator testified that Mother was bright and more than capable of self-referring, and the record shows Mother continuously declined assistance in self-referring.

¶15        Additionally, Mother failed to raise any concerns to the superior court prior to the termination hearing, and the record shows that, at a preliminary hearing, she had agreed to self-refer. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178-79, ¶ 16 (App. 2014) (finding that a parent who fails to "voice their concerns about services to the juvenile court in a timely matter," is precluded from challenging the court's finding that DCS made reasonable efforts to provide reunification services). Nevertheless, DCS was not required to provide Mother with a specific counselor of her choosing, and one who was not covered under her insurance plan, to meet its obligations. DCS is also not required to ensure a parent actually participates in the services it offers. *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). DCS made diligent efforts to provide Mother with multiple options for counselors, and Mother failed to take advantage of any of those options.

¶16        Mother's refusal to follow through with any of the various options for counseling was reflective of her general unwillingness to cooperate with DCS and complete the recommended services. DCS offered Mother eight substance abuse treatment referrals, two psychological evaluations, transportation, parent aides, supervised visitations, and drug testing. However, Mother failed to fully engage. While Mother did participate in supervised visitations throughout the dependency, even then she was alleged to have been combative, argumentative, and unwilling to follow DCS' rules. She also was inconsistent with attending visits throughout 2021. This lack of participation caused her referral to close out.

¶17        DCS is required to "provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Mary Ellen C.*, 193 Ariz. at 192, ¶ 37. Here, DCS offered Mother an array of appropriate services for two years which, had she successfully completed them, would have allowed for

reunification. The superior court did not err in terminating Mother's parental relationship to L.C.

## CONCLUSION

¶18       For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA